**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

HARVEY BARNETT,  )
  )
        Plaintiff,  )
  )
v.  )    Case No. 14 C 6307
  )
SMITH & NEPHEW, INC. and  )
NEUBAUER-PERKINS, INC.,  )
  )
        Defendants.  )

## MEMORANDUM OPINION AND ORDER

This personal injury lawsuit, brought by Harvey Barnett ("Barnett") to recover damages resulting from a failed hip implant, has had an oddly checkered history. It was originally filed in the Circuit Court of Lake County, Illinois on June 16, 2014, with both Smith & Nephew, Inc. ("Smith & Nephew," manufacturer of the implant device) and Neubauer-Perkins, Inc. ("Neubauer-Perkins," Smith & Nephew's exclusive sales agent and distributor) targeted as defendants. Within the time allowed for removal to the federal court system, Smith & Nephew (with the consent of Neubauer-Perkins, both defendants being represented by the same law firm) filed a Notice of Removal ("Notice") predicated on the asserted diversity-of-citizenship branch of federal subject matter jurisdiction.

There was an obvious potential hitch, however: Neubauer-Perkins shared Illinois citizenship with Barnett, a fact that would on its face destroy the total diversity required for more than two centuries (ever since the seminal decision in Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 207 (1806)). Smith & Nephew's proposed answer to that problem was that Neubauer-Perkins' citizenship could be disregarded under the doctrine of fraudulent joinder. For that purpose the

Notice pointed to an Illinois statute, 735 ILCS 5/2-621 ("Section 5/2-621"), which deals expressly with "any product liability action based on any theory or doctrine commenced or maintained against the defendant or defendants other than the manufacturer," buttressed by the affidavit of Neubauer-Perkins' President and Chief Executive Officer Wally Perkins ("Perkins"). And, indeed, the original Complaint's sole claim against Neubauer-Perkins, embodied in Complaint Count IV, was captioned "Strict Product Liability Against Neubauer-Perkins, Inc."

But before the parties called on this Court to decide the asserted fraudulent joinder issue, they decided to undertake discussions looking toward a possible settlement. To have matters retained in status quo in this District Court without a potential time bomb stemming from the possible absence of federal subject matter jurisdiction, Barnett voluntarily dismissed Neubauer-Perkins as a defendant without prejudice. Those discussions ultimately came to naught, so that a week ago Barnett's counsel came before this Court seeking to file a First Amended Complaint ("FAC," Dkt. 20) that would restore Count IV, bearing the same caption but modifying the original Complaint's allegations materially. For the reasons spelled out in this opinion, Barnett's motion for leave to file the FAC (Dkt. 20) is granted.

In response to that motion, Smith & Nephew's counsel has quite understandably reasserted the same fraudulent jurisdiction argument. When Barnett's motion was presented to this Court on its motion call, Smith & Nephew's counsel argued the matter briefly, once again pointing to two District Court opinions that had dealt with the issue in the same context of failed hip implants: <u>Millman v. Biomet Orthopedics, Inc.</u>, 2013 WL 6498394 (N.D. Ind. Dec. 10, 2013) and <u>Hilgers-Luckey v. DePuy Orthopaedics, Inc.</u>, 2012 WL 5530247 (N.D. Ohio Nov. 16, 2012). This Court set the pending motion over to March 18, 2015, assuring both sides' counsel that it would again review the fraudulent joinder issue in the context of the FAC's allegations,

viewed in the light of the cases and other supporting material that Smith & Nephew's counsel had earlier invoked at some length. It has done so, and this opinion is the result of its review.

Before this opinion turns to that subject, however, it is important to dispel a misapprehension evidenced by Smith & Nephew's able counsel: the notion that Barnett's self-characterization of his claim against Neubauer-Perkins as sounding in strict liability automatically dooms Barnett's jurisdictional contention. As this Court pointed out during the motion call, and as all too few lawyers (even those whose practice brings them regularly before the federal courts) are aware, there is a sharp and meaningful difference between the "claim for relief" concept that underpins the federal system (see Fed. R. Civ. P. ("Rule") 8(a)(2)) and the "cause of action" concept in state court practice -- see the excellent discussion by Judge Easterbrook in NAACP v. Am. Family Mut. Ins. Co., 978 F.2d 287, 292 (7th Cir 1992).

In that regard different theories of recovery -- different "causes of action" -- are really not a proper predicate for the division of a complaint into separate counts under the last sentence of Rule 10(b), even though most lawyers tend to follow such a practice (no doubt a hangover from the practice employed in most state court systems). Most significantly for substantive purposes, a plaintiff may specify the wrong theory of recovery (or no theory of recovery at all) and can still qualify in "claim for relief" terms -- see the opinion in the NAACP case and, perhaps even more pointedly, the decision earlier that year in Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1077-78 (7th Cir. 1992), containing another excellent discussion by Judge Easterbrook that continues to be cited and relied upon extensively today.

Thus freed from the tyranny of labels, this opinion turns to the real world posture of the jurisdictional issue. In that respect the two on-point District Court opinions that Smith & Nephew's counsel was candid enough to bring to the fore reached opposite results: In Millman

this Court's long-time friend Judge Robert Miller Jr., also dealing with an Illinois-citizen plaintiff and with Illinois-citizen defendant distributors that were assertedly joined fraudulently, relied on Section 5/2-621 to dismiss the distributors and therefore to deny remand and retain the case on his calendar, while in Hilgers-Luckey the District Judge there came to the polar-opposite conclusion and remanded the case to the state court of origin. On that score Notice at 7 seeks to distinguish Hilgers-Luckey on the basis that there "neither party offered affidavits or evidence and the court was required to rely only upon the pleadings."

That, however, oversimplifies matters in a critical way. Importantly, Section 5/2-621(c) bars the dismissal of a defendant such as Neubauer-Perkins even though Section 5/2-621(a) has been fully complied with, and in that respect this Court's careful parsing of the Perkins affidavit reveals that its principal focus was on negating the type of distributor involvements set out in Section 5/2-621(c)(1). But here is Section 5/2-621(c)(2), which also states an independent bar to dismissal:

> That the defendant had actual knowledge of the defect in the product which caused the injury, death or damage.

And on that score Perkins' affidavit says only this:

> 22. NPI is unaware of any defect in the Plaintiff's implant.
>
> 23. NPI does not have any knowledge of any aspect of the Plaintiff's implant which constitutes an unreasonably dangerous condition.

It is precisely in those areas that the FAC presents a factual dispute. FAC ¶¶ 53 through 56, for example, flesh out a degree of involvement on the part of Neubauer-Perkins that goes far beyond the ordinary sales activities most typical of the distributorship relationship. FAC ¶¶ 62 through 64 set out detailed federal regulatory requirements imposed on distributors of medical devices such as Neubauer-Perkins. And, indeed, FAC ¶¶ 60 and 61 describe a wholly atypical

degree of distributor involvement on the part of Neubauer-Perkins, in which two of its people were actually present in the operating room, one during the implantation surgery and the other when the fractured hip prosthesis was removed from Barnett's body. Most critically in the respect relevant to the current analysis, already-referred-to FAC ¶ 56 (emphasis added) alleges:

> At all times material and before the implantation of the EMPERION in the PLAINTIFF, NEUBAUER-PERKINS, INC. had regular communication with the implanting surgeons who utilized the EMPERION, including the surgeon who implanted the EMPERION in the PLAINTIFF, such that <u>NEUBAUER-PERKINS, INC. was in a unique position to provide SMITH & NEPHEW with warnings relative to the alleged defects in the EMPERION and did in fact provide SMITH & NEPHEW with such warnings based upon complaints and comments NEUBAUER-PERKINS, INC. received from the implanting surgeons</u>.

Thus, whether Barnett's claim against Neubauer-Perkins is viewed as cabined by the "strict liability" label or is alternatively treated as a less restrictive claim for relief, it is surely sufficient to preclude the dismissal of Neubauer-Perkins from this action. True enough, the quoted FAC allegation is framed in general terms rather than its pleading evidence (just as is equally the case with Perkins Affidavit ¶¶ 22 and 23). But it plainly satisfies the "plausibility" standard prescribed by the <u>Twombly</u>-<u>Iqbal</u> canon, and that certainly suffices to keep Neubauer-Perkins in court (with the particulars that support or do not support the litigants' competing positions to be fleshed out in the course of discovery).

All of that said, with the granting of leave to file the FAC the required total diversity of citizenship is destroyed by the presence of Illinois citizens on both sides of the "v." sign, so that "it appears that the district court lacks subject matter jurisdiction" (28 U.S.C. § 1447(c)), and the same statutory provision therefore mandates that "the case shall be remanded." This Court so

degree of distributor involvement on the part of Neubauer-Perkins, in which two of its people were actually present in the operating room, one during the implantation surgery and the other when the fractured hip prosthesis was removed from Barnett's body. Most critically in the respect relevant to the current analysis, already-referred-to FAC ¶ 56 (emphasis added) alleges:

> At all times material and before the implantation of the EMPERION in the PLAINTIFF, NEUBAUER-PERKINS, INC. had regular communication with the implanting surgeons who utilized the EMPERION, including the surgeon who implanted the EMPERION in the PLAINTIFF, such that <u>NEUBAUER-PERKINS, INC. was in a unique position to provide SMITH & NEPHEW with warnings relative to the alleged defects in the EMPERION and did in fact provide SMITH & NEPHEW with such warnings based upon complaints and comments NEUBAUER-PERKINS, INC. received from the implanting surgeons</u>.

Thus, whether Barnett's claim against Neubauer-Perkins is viewed as cabined by the "strict liability" label or is alternatively treated as a less restrictive claim for relief, it is surely sufficient to preclude the dismissal of Neubauer-Perkins from this action. True enough, the quoted FAC allegation is framed in general terms rather than its pleading evidence (just as is equally the case with Perkins Affidavit ¶¶ 22 and 23). But it plainly satisfies the "plausibility" standard prescribed by the <u>Twombly</u>-<u>Iqbal</u> canon, and that certainly suffices to keep Neubauer-Perkins in court (with the particulars that support or do not support the litigants' competing positions to be fleshed out in the course of discovery).

All of that said, with the granting of leave to file the FAC the required total diversity of citizenship is destroyed by the presence of Illinois citizens on both sides of the "v." sign, so that "it appears that the district court lacks subject matter jurisdiction" (28 U.S.C. § 1447(c)), and the same statutory provision therefore mandates that "the case shall be remanded." This Court so

orders, and it directs that the certified copy of the order of remand shall be mailed forthwith by this District Court's Clerk to the clerk of the Circuit Court of Lake County.

_____
Milton I. Shadur
Date: March 11, 2015Senior United States District Judge